AMIR JABERZADEH
3811, bluff pl, apt 8
San pedro, CA, 90731
Telephone: (323) 441-5089
Email: amirhossein.jaberzadeh@gmail.com
**Defendant/Counterclaimant**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AMERICAN HEART TECHNOLOGIES, LLC, a Delaware limited liability company; HEARTLUNG CORPORATION, a Delaware Corporation., <br> Plaintiffs, <br> v. <br> AMIRHOSSEIN JABERZADEH ANSARI aka AMIR JABERZADEH, an Individual; and DOES 1 – 10, <br> Defendants. <br><br> RELATED COUNTER-ACTION | Case No. 2:22-cv-08387-MEMF-RAO <br><br> Complaint Filed: November 16, 2022 <br> Trial Date: June 2, 2025 <br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** <br><br> DATE:  February 6, 2025 <br> TIME:  10:00AM <br> COURTROOM: 8B |

1

2

3

## **TABLE OF CONTENTS**

I.      INTRODUCTION ………………………………………...………………4
II.     STATEMENT OF FACTS ……………………………………...…………...4
III.    LEGAL STANDARDS APPLICABLE TO THIS MOTION …………..…….…………5
IV.     LEGAL ARGUMENT ……………………..………………………...………..6
        A ………………………………………………………...……………… 6
        B ……………………………………………………..……………………8
        C …………………………………………………………………………9
        D ……………………………………………………………………11
V.      CONCLUSION……………………………………………………13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

# TABLE OF AUTHORITIES

**Cases**

*Celotext Corp. v. Catrett*,
477 U.S. 317, 322-23 (1986)……………………………………………………6

*Invitrogen Corp. v. Clontech Labs., Inc.*,
429 F.3d 1052, 1062 (Fed. Cir. 2005) ……………………………………7

*Anderson v. Liberty Lobby*,
477 U.S. 242, 249 (1986) …………………………………………………7

*Orr v. Bank of America, NT & SA*,
285 F.3d 764, 783 (9th Cir. 2002) ……………………………………...7

*Angel v. Seattle-First Nat'l. Bank*,
653 F.2d 1293, 1299 (9th Cir. 1981) …………………………………....7

*S.E.C. v. Phan*,
500 F.3d 895, 909 (9th Cir. 2007) ………………………………………7

*Brown v. Grimes*,
(2011) 192 Cal.App.4th 265 ……………………………………………10

*Richman v. Hartley*,
 (2014) 224 Cal.App.4th 1182……………………………………………10

*Robinson v. Magee*
(1858) 9 Cal. 81, 83 ……………………………………………………10

*Welco Elecs., Inc. v. Mora*,
166 Cal. Rptr. 3d 877, 881 (Ct. App. 2014) …………………………11

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
55 Cal. Rptr. 3d 621, 638 (Ct. App. 2007) …………………………..11

**Statutes**

Federal Statutes
Defend Trade Secrets Act of 2016…………………………………………...7, 8

California Statutes
Cal. Civil Code § 3426.1(d)(1) and (2)…………………………………7
Cal. Civ. Code, §1689………………………………………………...10
Cal. Labor Code §226.8(a)(1)………………………………………12
Cal. Labor code §226.8(b) ………………………………………12
Cal. Labor Code §226.8(c)……………………………………………12
Cal. Labor Code §350(b)……………………………………………13
Cal. Labor Code §§ 1194……………………………………………13
Cal. Labor Code § 1197.1……………………………………………14

**Rules**

Federal Rules of Civil Procedure
Rule56(c) ………………………………………………………………6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT CASE NO. 2:21-CV-08387-MEMF-RAO

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs filed their First Amended Complaint on December 16, 2022, by the undersigned counsel, Naveen Madala. Plaintiffs bring four causes of action against Defendant Amir Jaberzadeh related to the misappropriation of Trade secrets. On April 3, 2023, Defendant responded to FAC and brought counterclaims against Plaintiffs and Morteza Naghavi for his unpaid salary. The Court entered a Civil Trial Order (hereinafter "CTO") that set the case schedule on June 16, 2024. On January 17, 2024, parties attended a mediation which did not reach an agreement. The Court amended the CTO pursuant to stipulations on February 26, 2024, and May 2, 2024. On or about October 31, 2024, the Court amended the CTO for the Defendant to file his motion for summary judgment. The Court also ordered Plaintiffs to identify their claimed "Trade secrets" by December 2, 2024.

### II.    FACTUAL BACKGROUND

American Heart Technologies, LLC is a holding company founded and wholly owned by Morteza Naghavi, an Iranian Citizen. American Heart Technologies, LLC is the majority stakeholder of HeartLung Corp., a medical research and development company that focuses on early detection of cardiovascular diseases and other medical conditions. American Heart Technologies, LLC and HeartLung Corp. will be referred to as the "Companies.". In April 2021, the Companies solicited work through an online platform. Amir responded by expressing interest in the opportunity and provided his resume. Amir signed a non-disclosure agreement, interviewed with the Companies and was hired.

On or about May 27, 2021, the parties entered into an agreement whereby Amir would perform work for the Companies to develop deep learning computer models for automated measurement of bone density, coronary calcium, fatty liver and other biomarkers in chest CT scans. In exchange, the Companies agreed to pay Amir $2,500.00 every two (2) weeks. The Companies also agreed to pay Amir certain incentives, namely paying full $30,000.00 for delivery of each of the four milestones stated in the agreement if finished early (ECF #11, exhibit B ). The Companies contend that payment to Amir was conditioned on completion of each milestone.

On September 3, 2021, Amir and the Companies amended their original agreement (Jaberzadeh Declaration, pp. 4-5). The new agreement added an additional milestone for the development of a program for automated reporting of lung nodules and texture in chest CT scans. The Companies agreed to increase Amir's pay to $5,000.00 every two (2) weeks. **Exhibit A**. Finally, the Companies agreed to issue Amir stock options in the amount of 100,000.00 shares in HeartLung that vest over three years. **Exhibit B**.

Throughout his engagement, Amir's duties resembled an employee rather than an independent contractor. Amir worked for the Companies full-time. He primarily worked from the Companies' offices in the Lundquist Institute's MRL building on the Harbor UCLA campus (Jaberzadeh Declaration, p. 36). He used tools provided by the Companies, such as computers, hard drives, and programs (Jaberzadeh Declaration, p. 6) The Companies dictated Amir's work schedule (Jaberzadeh Declaration, p. 37). Amir performed work within the Companies' usual course of business. The Companies, namely Naghavi, provided Amir direction and guidance in connection with the performance of the work (Jaberzadeh Declaration, p. 38). Finally, the Companies retained the right to end Amir's engagement at will (Jaberzadeh Declaration, p. 39).

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT CASE NO. 2:21-CV-08387-MEMF-RAO**

5

In January 2022, Amir noticed the Companies did not pay his payment. When Amir raised concerns over his pay (Jaberzadeh Declaration, pp 7-8, 10-11), Naghavi responded that the Companies expected to secure funding and that Amir would be paid when the Companies did so.

Between December 2021 and October 2022, Amir continued to work for the Companies without pay. He even performed tasks outside of his original scope of work, further supporting his status as an employee rather than independent contractor ( Jaberzadeh Declaration, p. 8).

On August 24, 2022, in recognition of Amir's continued employment, the Companies agreed to issue Amir an additional 500,000 shares of HeartLung that vest over three years, with 125,000 shares vesting immediately. **Exhibit C**.

Amir continued to complain to Naghavi about his unpaid wages. Naghavi repeatedly promised and reassured Amir that payments were forthcoming. Amir continued to perform his duties for the Companies in reliance on Naghavi's promises (Jaberzadeh Declaration, pp. 10-11).

In November, 2022, after ten (10) months and three (3) weeks of not being paid even minimum wages, Amir stopped all work. By failing to pay Amir wages for work performed, the Companies intentionally created or knowingly permitted working conditions that were so intolerable and/or aggravated that a reasonable person in Amir position would be compelled to resign.

On November 14, 2022, Naghavi demanded return of the Companies' tangible property. Amir consulted with an attorney to determine his obligations pursuant to the agreements he signed with the Companies.

On November 15, 2022, Amir confirmed that he will return all property in his possession, custody and control, including computers, hard drives and website credentials:
   • One computer + monitor + hard drive + cables
   • One computer + monitor + keyboard + hard drive + cables
   • One Synology NAS + 4 working drives in it + cables
   • Four Monitors + cables

The hard drives, computers, and shared website contained all the work Amir performed for the Companies. Amir regularly saved his work on Companies' Github account and OneDrive storage, including his codes, results, images for the review of Company advisors and employees. Amir also returned his main computer he used to code in September 2022 by the request of the Plaintiff (Jaberzadeh Declaration, p. 6).

That same day, on November 16, 2022, the Companies filed suit against Amir for alleged violations of trade secrets.

On November 18, 2023, Amir turned over all property in his possession.

On November 19, 2022, Naghavi emailed Amir confirming receipt of the property and stating that an audit would be conducted. Naghavi stated that, "Upon completion of the audits over next 72 hours, we will inform you of the results." (Jaberzadeh Declaration, pp. 14-15). Amir never heard from Naghavi or the Companies again.

On April 3, 2023, Amir answered to the Companies complaint and filed counterclaims for unpaid wages and breach of the stock purchase agreement.

III.   **LEGAL STANDARDS APPLICABLE TO THIS MOTION**

   A.   **Standard on Summary Judgment**

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotext Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial," and the moving party is entitled to a judgment as a matter of law. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," but there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

"[O]n summary judgment, the court holds the parties to the same evidentiary burden they would have faced at trial," *Invitrogen Corp. v. Clontech Labs., Inc*., 429 F.3d 1052, 1062 (Fed. Cir. 2005), and "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A court need not accept unsupported or conclusory statements as true. "If the evidence [offered by the nonmoving party in opposition] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. To defeat summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002). "[A] court may disregard self-serving and conclusory statements that contradict prior declarations." *Angel v. Seattle-First Nat'l. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981); *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007).

## IV.   LEGAL ARGUMENT

### A.   <u>PLAINTIFFS CANNOT PROVE THAT DEFENDANT VIOLATED THE DEFEND TRADE SECRETS ACT OF 2016</u>

Plaintiffs allege that Defendant violated the Defendant Trade Secrets Act of 2016 by "misappropriating" trade secrets and Defendant having the properties "held hostage", blocking Plaintiffs' access to the property. (See First Amended Complaint ("FAC") P. 36, 38). Cal. Civil Code § 3426.1(d)(1) and (2) state that a trade secret, "means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Here, it is clear that Plaintiffs do not even establish the requisite criteria to classify their product as a trade secret due to their failure to take reasonable efforts under the circumstances to maintain its secrecy. More specifically, when Plaintiff requested Defendant to hire cheap employees from Iran,

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT CASE NO. 2:21-CV-08387-MEMF-RAO**

**7**

Defendant asked if Iranian employees should sign any NDA, to which Naghavi responded, signing NDA for Iranians is ridiculous (Jaberzadeh Declaration, pp. 5,19).

Should the Court feel that the Plaintiffs satisfy the elemtns to classify a trade secret, Defendant did not misappropriate any trade secrets. Pursuant to the Defend Trade Secrets Act of 2016, "misappropriation" means, "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or "(B) disclosure or use of a trade secret of another without express or implied consent by a person who— "(i) used improper means to acquire knowledge of the trade secret; "(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was— "(I) derived from or through a person who had used improper means to acquire the trade secret; "(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or "(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or "(iii) before a material change of the position of the person, knew or had reason to know that— "(I) the trade secret was a trade secret; and "(II) knowledge of the trade secret had been acquired by accident or mistake."

In this case, the property in question was not acquired by accident or mistake as there was a valid work agreement/arrangement as stipulated to by both parties and evidenced throughout discovery. Defendant worked on, or created the work for Plaintiffs as part of said agreement. There is no allegation of a disclosure of any trade secret. The Plaintiffs allege that Defendant never returned the property and "held it hostage" which is patently false. Despite numerous requests from the Defendant, Plaintiffs never identified any file or document missing or not returned. Plaintiffs only provide the name of projects that Defendant was working on and alleged that they are not complete (Jaberzadeh Declaration, pp. 25-28). As evidenced (Jaberzadeh Declaration, pp. 6, 14),

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT CASE NO. 2:21-CV-08387-MEMF-RAO

8

Defendant returned all computers, hard drives and had communicated that the suremd.ai website was available for them to download, given them the access codes (such as user information and log in), to which Plaintiffs could utilize for 10 months (Jaberzadeh Declaration, p. 14). Defendant was paying for cloud storage out of his own pocket while no longer employed by Plaintiffs to help safeguard the property (Jaberzadeh Declaration, p. 14). After months of keeping the storage active for an approximate rate of about $100.00 per month for Plaintiffs (while no longer being employed), Defendant did not renew the subscription for the cloud-based storage as it was unreasonable to keep paying while Plaintiffs made no efforts to communicate and retrieve any and all data available to them. If there was any slight delay in communicating this information to Plaintiffs, it was de-minimus and/or reasonable given the ending of the working relationship and in no way malicious or willful as alleged in Cause of Action Number 3 in the First Amended Complaint. (ECF #11, p.50)

While not being required to do so in seeking summary judgment, Defendant shown through the evidence, and the lack of evidence and cooperation on from the Plaintiffs in satisfying their burden by proving the allegations in the First Amended Complaint, Defendant has demonstrated full compliance will all the rules and regulations of the Defend Trade Secret Act of 2016 within his power and NEVER misappropriated any trade secrets or "held it hostage" as Plaintiffs allege.

Therefore, Defendant respectfully requests that the first cause of action and third cause of action in Plaintiffs' FAC be dismissed with prejudice against the Defendant.

### B.    DEFENDANT DID NOT BREACH THE CONTRACT BETWEEN PLAINTIFFS AND DEFENDANT

It is well stipulated between the parties that there was an active contract/agreement between the parties and that it terminated at a subsequent date after work had been performed (ECF #11, exhibit B). Plaintiffs allege that the breach of contract came as Defendant "failed and refused, and

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT CASE NO. 2:21-CV-08387-MEMF-RAO

9

continues to fail and refuse, to return all tangible and intangible property owned by HeartLung, including all Trade Secrets", which is allegedly in violation of Section 8 of the Agreement. (ECF #11, P. 44).

To prevail on a breach of contract in California, the plaintiff must prove these elements (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *(Richman v. Hartley* (2014) 224 Cal.App.4th 1182*)* "A contract is a voluntary and lawful agreement, by competent parties, for a good consideration, to do or not to do a specified thing." (*Robinson v. Magee* (1858) 9 Cal. 81, 83.)

Where a party to a contract fails to perform in accordance with the contract, or if the consideration he is required to give otherwise fails in whole or in part through his fault, the other party may invoke this failure as a basis for rescinding or terminating the contract, as long as the failure or refusal to perform constitutes such a material breach as to justify rescission or termination. (*Brown v. Grimes* (2011) 192 Cal.App.4th 265; Cal. Civ. Code, §1689.)

While Plaintiffs did not complete their full obligations under the contract, Defendant never breached any contract with Plaintiffs. Defendant fully complied with the requests of Plaintiffs and the terms of the agreement. Plaintiffs are looking to circumvent their own negligence and pin blame on the Defendant.

As iterated in the prior argument, Defendant never "held hostage" the property alleged by Plaintiffs. In fact, Defendant provided Plaintiffs with all computers, hard drives, access codes/login information for Plaintiffs to download and exercise their exclusive control over such property for 10 months (Jaberzadeh Declaration, pp. 6, 14).

Again, while not being required to do so in seeking summary judgment, Defendant shown through the evidence, and the lack of evidence and cooperation on from the Plaintiffs in satisfying

their burden by proving the allegations in the First Amended Complaint, Defendant did not breach Section 8 or any other provision/article of the Contract with Plaintiffs.

Therefore, Defendant respectfully requests that the second cause of action in Plaintiffs' FAC be dismissed with prejudice against the Defendant.

### C.   DEFENDANT NEVER CONVERTED ANY TANIGBLE OR INTANIGBLE PROPERTY FOR HIS OWN USE

 "Conversion is the wrongful exercise of dominion over the property of another." *Welco Elecs., Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 881 (Ct. App. 2014). Under California law, conversion has three elements: (1) the plaintiff owns or has a right to possess the personal property; (2) the defendant disposes "of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 55 Cal. Rptr. 3d 621, 638 (Ct. App. 2007). Plaintiffs cannot show through any evidence that Defendant utilized any of Plaintiffs property for wrongful personal use, or disposes of the property in a manner that is inconsistent with the plaintiffs' property rights. In fact, Defendant does not have any access to any of Plaintiffs property and did not have any access to it as of November 18, 2022 after Defendant returned all of Plaintiffs' property. Defendant did not utilize any resources of Plaintiffs after November 18, 2022 (Jaberzadeh Declaration, pp. 6, 14).

Defendant willingly gave Plaintiffs all the work, computers, hard drives, and access to the suremd.ai website to download and delete files for more than a reasonable amount of time, in a third-party storage system as usually done throughout the relationship, to a substantial financial burden to himself for maintaining the cloud-based storage (Jaberzadeh Declaration, p. 14) Defendant cannot control the actions of Plaintiffs or can speak to their intent on wanting to abandon said property, however, at no time did Defendant utilize any property of Plaintiffs as alleged in ECF #11, P. 55.

Moreover, damages could not be reasonably ascertained. If they could, it would be of no fault of the Defendant. Plaintiffs cannot willfully just let things expire and abandon their property and then circle back to the Defendant for damages. They are the cause of their own damage.

Again, while not being required to do so in seeking summary judgment, Defendant shown through the evidence, and the lack of evidence and cooperation from the Plaintiffs in satisfying their burden by proving the allegations in the First Amended Complaint.

Therefore, Defendant respectfully requests that the fourth cause of action in Plaintiffs' FAC be dismissed with prejudice against the Defendant.

### D. DEFENDANT'S COUNTERCLAIMS ALL SUCCEED AS A MATTER OF LAW AND SHOULD BE GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT AND AWARDED ALL COSTS, FEES (ATTORNEY AND PRO SE), PRE JUDGMENT INTEREST, AND ANY OTHER RELIEF THE COURT DEEMS JUST AND APPROPRIATE

Pursuant to Labor Code §226.8(a)(1), it is unlawful for any person or employer to engage in willful misclassification of an individual as an independent contractor. Pursuant to Labor code §226.8(b), if a court issues a determination that a person or employer has violated subdivision (a), the person or employer shall be subject to a civil penalty of not less than five thousand dollars ($5,000.00) and not more than fifteen thousand dollars ($15,000.00) for each violation, in addition to any other penalties or fines permitted by law.

Pursuant to Labor Code §226.8(c), if a court issues a determination that a person or employer has violated subdivision (a) and the person or employer has engaged in or is engaging in a pattern or practice of these violations, the person or employer shall be subject to a civil penalty of not less than $10,000.00 and not more than $25,000.00 for each violation, in addition to any other penalties or fines permitted by law.

During the period of Amir's employment with the Companies, Amir was an employee of The Companies, and each of them based upon their alter ego relationship, as defined by California

Labor Code §350(b). However, The Companies purposefully misclassified Amir and all of their other employees as an "Independent Contractor" because, by so doing, the Companies lowered their cost of doing business by means of, but not limited to, the following:

a. The Companies did not report or pay the employer's share of federal or state payroll taxes with respect to any of the funds paid to Amir or their employees, as required by required by federal and state law;

b. The Companies did not provide or pay for Workers Compensation insurance for Amir or their employees;

c. The Companies did not provide or pay for State Disability insurance for Amir or their employees; and

d. The Companies did not provide or pay for benefits to Amir employees should receive, such as paid sick leave and other benefits.

As a direct and proximate result of the aforementioned violations, Amir has suffered, and continues to suffer, substantial losses related to the loss of the employer's share of payroll taxes, the use and enjoyment of such employee benefits, and expenses and attorneys' fees in seeking to compel the Companies to fully perform their obligation under state law.

Labor Code §§ 1194 provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." From December 2021 to November 2022, Amir was not paid even minimum wages for the work performed. Amir estimates that he worked over 2000 hours during this period. At $57.00 per hour. ($5,000.00 bi-weekly divided by 2080 hours per year), it is estimated Defendant is owed $115,384.61 in unpaid wages.

In addition, The Companies must pay penalties for underpayment of minimum wages. Pursuant to Labor Code § 1197.1:

> Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty and restitution of wages payable to the employee, as follows:
>
> (1) For any initial violation that is intentionally committed, one hundred dollars ($100.00) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages.
>
> (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250.00) for each underpaid employee for each pay period for which the employee is underpaid, regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages.

Amir worked for The Companies for 25 pay periods for which he was not paid. He is owed penalties in the amount of $6,100.00 calculated as follows: $100.00 for the first pay period violation + $250.00 for each of the 24 subsequent pay periods he worked.

Naghavi testified in his deposition that HeartLung has authorized 11 million shares of stock. In 2022, HeartLung sold 1 million shares of stock to an investor in Utah for $1 million. HeartLung, therefore, has a market valuation of just under $10 million dollars today.

During his engagement with Plaintiffs, Amir worked over 4500 hours for Plaintiffs, including over 2000 hours of overtime work (Jaberzadeh Declaration, p. 16, and Exhibit B). The Companies issued 600,000 shares of stock in HeartLung to Amir, of which 158,333 vested before his separation. But for the Company's failure and refusal to pay Amir his wages, Amir would have stayed with the Company and the remainder of his share would have vested. Therefore, Amir damaged by about $600,000.00 alone with this.

## V.     <u>CONCLUSION</u>

For the reasons set forth above, summary judgment should be granted in favor of Defendant on all causes of action. Defendant is also entitled to all litigation costs due to the attorney fees and costs clause in the contract between Defendant and Plaintiffs.

DATED: December 25, 2024                    Amir Jaberzadeh, Pro Se

By: _____

Amir Jaberzadeh, Defendant/Counter Claimant