O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| American Heart Technologies, LLC, et al.,<br><br>    Plaintiff(s),<br><br>    v.<br><br>Amirhossein Jaberzadeh Ansari, et al.,<br><br>    Defendant(s). | Case No.: 2:22-cv-08387-MEMF-RAO<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>**[ECF NO. 82]** |

Before the Court is a Motion for Attorney's Fees and Costs filed by Defendant and Counterclaimant Amirhossein Jaberzadeh Ansari ("Ansari"). ECF No. 82. For the reasons stated herein, the Court hereby GRANTS the Motion for Attorney's Fees and Costs IN PART.

/ / /

/ / /

/ / /

1

**SUMMARY OF ORDER FOR *PRO SE* LITIGANT AMIRHOSSEIN JABERZADEH ANSARI**

The Court addresses your Motion for Attorney's Fees and Costs in this Order. You requested that the Court award you $56,734.99 in reasonable attorney's fees and $3,369 in costs, for a total of $60,103.99. ECF No. 82 at 2. This Order will explain why the Court GRANTS your Motion for Attorney's Fees and Costs IN PART. Because you are proceeding without an attorney, the Court included a section at the end of this Order with resources for self-represented litigants that you may find helpful.

## BACKGROUND

### I. Factual Background

Plaintiff and Counterclaim Defendant American Heart Technologies, LLC ("American Heart") is a medical research and development company that invests in and develops medical technologies that focus on early detection of cardiovascular diseases, lung cancer, and other medical conditions. Plaintiff and Counterclaim Defendant HeartLung Corporation ("HeartLung") is a startup venture of American Heart.[1] American Heart and HeartLung collaborate with university medical centers to develop and commercialize advanced artificial intelligence ("AI") technologies for early detection of medical conditions. Counterclaim Defendant Morteza Naghavi ("Naghavi") is the founder and Chief Executive Officer of HeartLung.[2] Defendant and Counterclaimant Amirhossein Jaberzadeh Ansari is a former contractor of HeartLung.

This case concerns American Heart and HeartLung's allegations that Ansari misappropriated Plaintiffs' trade secrets, breached relevant contracts and duties, and converted Plaintiffs' trade secrets for his own personal use.

### II. Procedural History

On November 16, 2022, Plaintiffs filed a complaint against Ansari and Does 1 through 10. ECF No. 1. Plaintiffs filed a First Amended Complaint on December 16, 2022, alleging four causes

---

[1] The Court will refer to American Heart and HeartLung, collectively, as the "Plaintiffs."
[2] The Court will refer to American Heart, HeartLung, and Naghavi, collectively, as the "Counterclaim Defendants."

2

of action: (1) trade secret misappropriation under federal law (18 U.S.C. § 1836, *et seq.*); (2) breach of contract; (3) trade secret misappropriation under state law (Cal. Civ. Code § 3426); and (4) conversion. *See generally* ECF No. 11 ("First Amended Complaint" or "FAC").

On April 3, 2023, Ansari filed an Answer and Counterclaim. ECF No. 18. Ansari asserted fifteen affirmative defenses and twelve counterclaims against American Heart, HeartLung, Naghavi, and Roes 1 through 10. *See id.* At the summary judgment stage, Ansari sought summary judgment as to Plaintiffs' four causes of action and his twelve state-law counterclaims. ECF Nos. 63, 63-7.

On April 21, 2025, this Court granted summary judgment in part and dismissed Plaintiffs' two trade secret claims, breach of contract claim, and conversion claim. ECF No. 76 ("SJ Order"). The Court declined to rule on whether Ansari is entitled to summary judgment on his state law counterclaims and ordered Plaintiffs to show cause as to why the Court should exercise supplemental jurisdiction over the remaining counterclaims. *Id.*

On May 5, 2025, Plaintiffs filed a response in favor of the Court declining to exercise supplemental jurisdiction. ECF No. 80. On June 4, 2025, the Court dismissed Ansari's twelve state-law counterclaims without prejudice so that Ansari may refile them in California state superior court. ECF No. 92.

On May 8, 2025, Ansari filed the instant Amended Motion for Attorney's Fees and Costs. ECF No. 82 ("Motion" or "Mot."). Plaintiffs filed an opposition and Ansari filed a reply. ECF Nos. 84 ("Opposition" or "Opp'n"), 86 ("Reply").

**I.      Applicable Law**

Under California law, parties to a contract may agree that attorney's fees shall be awarded to the prevailing party if there is litigation regarding the contract, and in that circumstance, attorney's fees "shall be awarded" to the "the party who is determined to be the party prevailing on the contract." *See* Cal. Civ. Code § 1717(a). "Reasonable attorney's fees shall be fixed by the court." *See id.* After a noticed motion, the court "shall determine who is the party prevailing on the contract for purposes of this section." *See id.* "The determination of the party prevailing on the contract for purposes of awarding attorney fees under section 1717 must be made independently of the determination of the party prevailing in the overall action for purposes of awarding costs under Code

3

of Civil Procedure section 1032." *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 239 (2012). The "burden of proof is on the party seeking the attorney fee award." *Diamond v. John Martin Co.*, 753 F.2d 1465, 1467 (9th Cir. 1985).

"Where a cause of action based on the contract providing for attorneys' fees is joined with other causes of action beyond the contract, the prevailing party may recover fees under section 1717 only as they relate to the contract action." *Id.* "A litigant may not increase the fee recovery by joining a cause of action in which fees are not recoverable with one in which they are." *Id.* "The converse is also true; that is, joinder [of several causes of action] should not dilute the right to attorneys' fees." *Id.* "Thus, although time-keeping and billing procedures may make a requested segregation difficult, they do not, without more, make it impossible." *Id.*

"The determination of what constitutes the actual and reasonable attorney fees are committed to the sound discretion of the trial court." *Fed-Mart Corp. v. Pell Enters., Inc.*, 111 Cal. App. 3d 215, 228 (Ct. App. 1980). Unless special circumstances dictate a different award, a party should generally recover for "all hours reasonably spent." *Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 447 (1998); *see also Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983) ("In computing the fee, counsel for a prevailing party should be paid, as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter."). "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." *Meister*, 67 Cal. App. 4th 437, 447–48. Where a court specifically requests certain information in order to calculate a fee award, and a party refuses to provide it, the Court does not abuse its discretion by awarding a fee award far smaller than what was requested. *See Diamond*, 753 F.2d at 1468.

**II.     Discussion**

Ansari moves for attorney's fees solely on a contractual basis. The parties dispute whether Ansari is the prevailing party in this action[3] but otherwise agree that the relevant contract authorizes

---

[3] Plaintiffs dispute that Ansari is the prevailing party as to his breach of contract counterclaim, but do not seriously dispute that Ansari is the prevailing party as to Plaintiffs' breach of contract claim and other related claims brought against him. Opp'n at 2–3.

an award of attorney's fees to the prevailing party. The Court therefore must first determine which party is the prevailing party before calculating the appropriate fee award. For the reasons discussed below, the Court finds that Ansari is entitled to attorney's fees as the prevailing party under the relevant contract, and GRANTS IN PART Ansari's Motion. The Court will award a reduced amount of attorney's fees and costs.

### A. Ansari is Entitled to Fees Under Contract as the Prevailing Party.

The determination of the "prevailing party" for attorney's fees based on a contractual provision requires ascertaining who is the "prevailing party *on the contract*," which in some circumstances is distinct from "the party prevailing in the overall action." *See Barnhart*, 211 Cal. App. 4th at 239 (emphasis in original). "When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims." *Id.* "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Id.*

First, the Court finds that the relevant contract authorizes fee awards for the prevailing party. Neither party attempts to dispute this. *See* Mot, Opp'n. Ansari entered into a Services Agreement with American Heart and HeartLung. ECF No. 63-10 at 2. ("Services Agreement" or "Agreement"). The Services Agreement contains a fee-shifting provision:

> 27. <u>Legal Fees</u>.  If any legal action is brought by either of the parties hereto, it is expressly agreed that the party in whose favor final judgment shall be entered shall be entitled to recover from the other party reasonable attorney's fees in addition to any other relief which may be awarded.

*Id.* (Section 27).

Second, the Court finds that Ansari was the prevailing party on the contract claims. Here, each side brought claims for breach of contract as to the Services Agreement. *See* FAC (operative claims), ECF No. 18 (operative counterclaims). The Court granted partial summary judgment in Ansari's favor and dismissed Plaintiffs' two trade secret claims, conversion claim, and breach of

5

contract claim. *See* SJ Order. Ansari misstates the record when he asserts that the Court also granted him summary judgment on his misclassification as independent contractor claim. Mot. at 1. The Court issued a tentative order finding that Ansari was entitled to summary judgment on his misclassification claim. However, upon Ansari's request at the summary judgment hearing, the Court's final SJ Order declined to reach the misclassification claim and the twelve counterclaims, but this was not accurately reflected due to two scrivener's errors.[4] *See* SJ Order at 19. The Court subsequently entered a minute order dismissing those counterclaims without prejudice so that Ansari may refile them in California state superior court. *See* ECF No. 92. Regardless, the Court still finds Ansari was the prevailing party because he succeeded in defending against Plaintiffs' breach of contract claim and other related claims at summary judgment.

Plaintiffs argue that Ansari is not the prevailing party because the Court's SJ Order did not reach the merits of Ansari's breach of contract counterclaim. Opp'n at 2. Because of this, Plaintiffs insist the "net success cannot be ascertained until the final termination of the suit." *Id.* at 4. Plaintiffs further point out that some of Ansari's employment-related counterclaims seek to "invalidate the terms" of the Services Agreement. *Id.* Until those counterclaims "are resolved by a California court," Plaintiffs contend there is "no final disposition of the rights of the parties and therefore no prevailing party under Civil Code [section] 1717." *Id.* at 5.

The Court disagrees. "[I]n deciding whether there is a 'party prevailing on the contract,'" this Court must "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Hsu v. Abbara*, 9 Cal. 4th 863, 876 (1995). "The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a

---

[4] The Court notes two scrivener's errors in the SJ Order, which will be corrected in a separate Amended SJ Order. First, the Court mistakenly concluded that "Summary Judgment is GRANTED to Ansari on the Misclassification as Independent Contractor Claim." SJ Order at 21. Second, the Court signaled in footnote 13 that it would address Ansari's misclassification claim (it did not). *Id.* at 19 n.13. Because the Court declined to address whether Ansari was entitled to summary judgment on his twelve counterclaims, the Court also did not reach the misclassification claim.

comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" *Id.* (citation omitted).

Plaintiffs' main objective in bringing this suit was to obtain the relief requested in the complaint. Ansari's objectives were twofold: (1) to prevent Plaintiffs from obtaining such relief and (2) to obtain separate relief requested in the countercomplaint. Because Plaintiffs' four causes of action terminated in dismissal at summary judgment, Plaintiffs did not obtain by judgment any of the relief they requested. Therefore, Plaintiffs failed in their litigation objective and Ansari succeeded in his, in part, by defending against Plaintiffs' suit. *See Santisas v. Goodin*, 17 Cal. 4th 599, 609 (1998). Under these circumstances, section 1717 permits litigants like Ansari to recover attorney's fees "whenever the opposing part[y] would have been entitled to attorney fees under the contract had they prevailed." *Id.* at 610–611 ("The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims," such as "when a person sued on a contract . . . defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' " (citation omitted)); *see DisputeSuite.com, LLC v. Scoreinc.com*, 2 Cal. 5th 968, 973 (2017) ("[A] party who obtains an unqualified victory on a contract dispute, including a defendant who defeats recovery by the plaintiff on the plaintiff's entire contract claim, is entitled as a matter of law to be considered the prevailing party for purposes of section 1717." (citing *Hsu*, 9 Cal. 4th at 876)).

Moreover, Plaintiffs concede in their Opposition that their two trade secret claims are "related to and connected to" their breach of contract claim. Opp'n at 3. If that is the case, then by Plaintiffs' own count, Ansari would still achieve a "net success" even if he were to lose on his breach of contract counterclaim in state court. Either way, Ansari comes out the prevailing party. Finally, the Court rejects Plaintiffs' argument that there is no final judgment on the contract claims given Ansari's employment-related counterclaims seek to invalidate provisions of the Services Agreement. *Id.* at 2. At the summary judgment hearing, Plaintiffs admitted that if Ansari were to prevail on his misclassification as independent contractor claim, then Plaintiffs would have to devise an entirely new employment contract determining Ansari's rate of pay and job title as a full-time

employee of HeartLung. Such an outcome would have no impact on validity of the Services Agreement, which the parties agree is a valid enforceable contract.[5] FAC ¶ 42; ECF No. 63-7 at 9.

Accordingly, Court concludes that Ansari was the "prevailing party" under the Services Agreement and is thus entitled to reasonable attorney's fees and costs.

### B. The Court Awards Ansari Reduced Attorney's Fees and Costs.

Ansari requests $56,734.99 in reasonable attorney's fees. *See* Mot. at 2; Declaration of Amirhossein Jaberzadeh Ansari, ECF No. 82-1 ("Decl. Ansari") ¶¶ 5–8. This requested award is based on a $750 flat fee for Peter Lively ("Lively"), $650 hourly rate for Alain V. Bonavida ("Bonavida"), $695 flat fee for Steven Vondran ("Vondran"), $350 hourly rate for Aidin Ghavimi ("Ghavimi"), $150 hourly rate for Jared Wichnovitz ("Wichnovitz"), $125 hourly rate for Pearlette Toussant ("Toussant"), and $150 hourly rate for other support staff. *See* ECF No. 82-2 at 5–67.

As an initial matter, the Court notes that Plaintiffs do not contest in their Opposition the amount or reasonableness of the fees and costs sought for Lively, Vondran, Wichnovitz, Toussant, and other support staff. *See* Opp'n. The Court will therefore first address the reasonableness of these fees and costs before turning to Plaintiffs' arguments. In determining fees, the Court applies the lodestar method, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The Court finds that the hourly rates applied by Lively, Vondran, Wichnovitz, Toussant, and other support staff are reasonable. *See* ECF No. 82-2 at 5–10, 38–61. The Court further finds that the hours Lively, Vondran, Wichnovitz, and Toussant expended (41.6) were reasonable to defend against Plaintiffs' claims. *See id.* However, the Court denies Ansari's request for $1,749 in "expert witness fees" because it is not supported by the evidence, as Exhibit 11 is an invoice for forensic investigation services. *See id.* at 62–64; *see also* ECF No. 94. Moreover, Ansari stated at the hearing that Plaintiffs agreed to refund him for this cost.

---

[5] The Court further notes that if Ansari were to prevail on his misclassification claim in state court, then his employment-related counterclaims would directly implicate the newly devised employment contract (not the Services Agreement), since the unpaid wages Ansari is seeking are provided to full-time employees by law. *See* ECF No. 18. Conversely, if Ansari were to lose on his misclassification claim, then his employment-related counterclaims would have no effect on the Services Agreement.

Plaintiffs raise numerous challenges to Ansari's Motion. First, Plaintiffs argue Ansari is not entitled to a full recovery of attorney's fees because section 1717 "applies only to fee requests based on *contractual* fee-shifting clauses, not to *statutory* fee-shifting provisions." Opp'n at 3 (emphasis in original). According to Plaintiffs, this distinction is important because their breach of contract claim is "connected to and related to" their two trade secret claims brought under the Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA"), each of which have their own fee-shifting provisions. *Id.* (citing 18 U.S.C. § 1836(b)(3)(D) and Cal. Civ. Code § 3426.4). Since Ansari has not made the required "showing of bad faith" under the DTSA and CUTSA, Plaintiffs argue he is not entitled to the full amount of requested attorney's fees. *Id.* at 3–4. The Court rejects Plaintiffs' argument because California law permits a party to recover attorneys' fees when provided for by contract *or* statute. *See* Cal. Civ. Proc. Code §§ 1021, 1033.5(a)(10). As discussed previously, Ansari elected to recover attorney's fees on a contractual basis only. *See* Mot. at 2; Services Agreement at 9, Section 27. Accordingly, the Court need not decide whether Ansari would be entitled to attorney's fees under the DTSA or CUTSA.

Second, Plaintiffs argue that the Court should strike Ansari's Motion on the ground that Ansari proceeded *pro se* during a period of time throughout litigation and is therefore not entitled to recover attorney's fees for that period. Opp'n at 6. Section 1717 provides for the recovery of fees "incurred" to enforce a contract. Cal. Civ. Code § 1717(a). While it is generally true a litigant acting in *propria persona* cannot be said to "'incur'" fees under section 1717, *see Trope v. Katz*, 11 Cal. 4th 274, 280 (1995), a *pro se* litigant may still recover attorney's fees when he or she "actually pays or becomes liable to pay for legal representation." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1092 (2000) (citing *Trope*, 11 Cal. 4th at 280). Here, Ansari "incurred" legal fees from various counsel and provided evidence of proof of payment. *See* ECF No. 82-2. Plaintiffs cite to no binding authority to support their argument that Ansari cannot recover attorney's fees because his attorneys merely wrote his motions without appearing in court or were not registered in the Central District of California. *See* Opp'n at 7. The Court thus denies Plaintiffs' request to strike Ansari's Motion on this basis.

Third, Plaintiffs argue Ansari is entitled to recover attorney's fees only for the four claims on which he prevailed at summary judgment, and nothing for the counterclaims. Opp'n at 5. As discussed previously, "[w]here a cause of action based on the contract providing for attorneys' fees is joined with other causes of action beyond the contract, the prevailing party may recover fees under section 1717 only as they relate to the contract action." *Diamond*, 753 F.2d at 1467. "A litigant may not increase the fee recovery by joining a cause of action in which fees are not recoverable with one in which they are." *Id.* "Thus, although time-keeping and billing procedures may make a requested segregation difficult, they do not, without more, make it impossible." *Id.* In his Reply, Ansari states that Ghavimi was the sole attorney who worked on prosecuting the twelve counterclaims. Reply at 4. Since only the breach of contract counterclaim arises, in part, under the Services Agreement, *see* ECF No. 18 at 27, the Court will limit the fees Ansari ultimately recovers from Ghavimi to the hours Ghavimi reasonably expended in prosecuting the breach of contract counterclaim and will exclude time spent on the remaining counterclaims.

Fourth, Plaintiffs argue Ansari is not entitled to a full recovery of attorney's fees because the billing records for Starpoint Law make no "mathematical sense" and are not documented with specific date and time entries and descriptions. *Id.* Specifically, Plaintiffs contend Ansari is "misleading the Court" in claiming an hourly rate of $475 for Ghavimi when, in fact, Ansari entered into an amended agreement to pay Ghavimi $350 per hour. *Id.*; *see* Ansari Decl. ¶ 6. Plaintiffs also argue Ansari was not actually billed for 91.5 hours of work. Opp'n at 7; *see* Ansari Decl. ¶ 6. The Court must base its award on the evidence a party submits and may reduce the award if the evidence does not support the award sought. *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). Reviewing the billing records, the Court agrees with Plaintiffs that Ansari and Starpoint Law entered into an amended agreement on February 20, 2024, in which Ansari agreed to pay Ghavimi $350 per hour. ECF No. 82-2 at 35. Starpoint Law's invoices billed Ansari at the agreed-to $350 hourly rate, *id.* at 22–26, notwithstanding an email Ansari submitted in support of his Motion in which Ghavimi states his current hourly rate is $475 as of May 7, 2025, *id.* at 67. The Court, however, disagrees

1  with Plaintiffs that Ghavimi's billing descriptions are not properly documented and finds that
2  Ghavimi's time entries amount to 91.5 hours. *See id.* at 66. Ghavimi estimates that he spent 14 hours
3  drafting the Answer and Counterclaim. *Id.* Because the Court must limit Ansari's recovery of fees to
4  the hours Ghavimi spent prosecuting the breach of contract counterclaim, the Court, in its discretion,
5  will permit Ansari to recover fees for only 3.5 hours of the total 14 hours Ghavimi spent working on
6  these documents.[6] Applying the lodestar method, *Intel Corp.*, 6 F.3d at 622, the Court finds that
7  Ghavimi's $350 hourly rate and the total hours expended (81 hours) are reasonable based on the
8  scope of work Ghavimi provided. *See* ECF No. 82-2 at 66. Moreover, the Court finds that the cost
9  requested for hiring a deposition videographer ($1,620) is reasonable. *See* Mot. at 2; ECF No. 82-2
10  at 17.

11  Fifth, Plaintiffs argue the fees and hours claimed by Bonavida are "grossly excessive" and
12  should be rejected. Opp'n at 7–8. Plaintiffs maintain that Bonavida "did not file anything with the
13  Court, did not file or oppose any motions, did not conduct discovery, and did not conduct any
14  depositions." *Id.* In his Reply, Ansari states that he consulted with Bonavida after Plaintiffs had
15  informed him about the lawsuit against him and formally retained Bonavida on December 10, 2022.
16  Reply at 5. For the next three to four months, Ansari alleges Bonavida engaged in "multiple
17  conversations with Plaintiffs" through various phone calls and emails, many of which Ansari
18  attached to his Reply as evidence. *Id.*; *see id.* at 10–43. In light of the emails provided, the Court
19  finds Bonavida's fees and hours are not "grossly excessive." Applying the lodestar method, the
20  Court further finds that Bonavida's $650 hourly rate and total hours expended (13.6) are reasonable.
21  *See Intel Corp.*, 6 F.3d at 622; ECF No. 82-2 at 1–10.

22  Sixth, Plaintiffs argue that the Court should strike Ansari's Motion on the ground that
23  Counterclaim Defendant Naghavi was not a signatory to the Services Agreement and is therefore not
24  liable for attorney's fees incurred by Ansari. Opp'n at 8. The Court rejects Plaintiffs' request to
25  strike because it is clear from Ansari's Motion and declaration that he is not requesting an award of

---

[6] In reaching this amount, the Court also considered the hours it spent addressing the counterclaims at the summary judgment stage.

attorney's fees against Naghavi. *See* Mot.; Ansari Decl. The Court also refuses to consider Ansari's argument—raised for the first time in his Reply—that Naghavi is liable for attorney's fees on an alter-ego theory.[7] *See State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (stating general rule that parties cannot raise new issues for first time in reply briefs); *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (striking new information from reply brief, while noting this practice "deprived the [opposing party] of an opportunity to respond.").

Accordingly, the Court grants the reduced amount of fees and costs requested by Ansari: $41,728.73 in fees for 122.5 hours of work and $1,620 in costs, for a total of $43,348.73.

## RESOURCES FOR *PRO SE* LITIGANTS

Although Ansari is proceeding *pro se*, *i.e.*, without legal representation, he nonetheless is required to comply with Court orders, the Local Rules, and the Federal Rules of Civil Procedure. *See* C.D. Cal. L.R. 83-2.2.3. The Local Rules are available on the Court's website, http://www.cacd.uscourts.gov/court-procedures/local-rules. The Court cannot provide legal advice to any party, including *pro se* litigants. There is a free "*Pro Se Clinic*" that can provide information and guidance about many aspects of civil litigation in this Court.

Public Counsel runs a free Federal *Pro Se* Clinic where *pro se* litigants can get information and guidance. The Clinic is located at the Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, CA 90012. *Pro se* litigants must call or submit an on-line application to request services as follows: on-line applications can be submitted at http://prose.cacd.uscourts.gov/los-angeles, or call (213) 385-2977, ext. 270.
Public Counsel also has extensive resources for *pro se* litigants at its website located at https://publiccounsel.org/services/federal-court/.

The Court is also informed that the LA Law Library, located across the street from the First Street Courthouse at 301 W. First Street, Los Angeles, CA 90012, also has extensive resources for *pro se* litigants—including those in federal court. The LA Law Library offers legal research classes,

---

[7] Even if Ansari had raised the alter-ego theory as to Naghavi in his Motion, the Court would still have rejected the argument, as it would not have affected the outcome: the Court already determined that Ansari is entitled to recover attorney's fees from Plaintiffs, and Ansari is not entitled to a double recovery.

assistance from reference librarians, and free public computers with Internet access. The LA Law Library can be reached via email at reference@lalawlibrary.org, or via telephone at (213) 785-2513.

### CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1. Ansari's Motion for Attorney Fees (ECF No. 82) is GRANTED IN PART; and
2. The Court awards attorney's fees to Ansari in the amount of $41,728.73 and costs in the amount of $1,620 for a total of $43,348.73.

IT IS SO ORDERED.

Dated: August 19, 2025

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge